**UNITED STATES of America**

v.

**Arif DURRANI.**

**Crim. No. B–86–59.**

United States District Court, D. Connecticut.

April 2, 1987.

See also, 659 F.Supp. 1177.

Ira Grudberg, William M. Bloss, Jacobs Grudberg Belt & Dow, P.C., New Haven, Conn., for defendant.

DALY, Chief Judge.

The defendant, pursuant to his March 26 and 27, 1987 offers, seeks the admission of the Report of the President's Special Review Board (hereinafter the "Tower Report" or the "Report") in its entirety. Alternatively, the defendant seeks to admit pages III–1 through III–18 and that portion of page III–19 through "Section B: Contra Diversion." In support, defendant cites Fed.R.Evid. 801(d)(2), 803(8)(C), and 803(24). The Court, having reserved decision at the time of the offers, hereby finds the evidence at issue inadmissible on the present record.[1]

With respect to the entire Tower Report, defendant has failed, pursuant to Fed.R.Evid. 401, to identify which portions of the Report are relevant. Defendant, on March 26, 1987, indicated his offer is for the Board's factual finding that there was a widespread scheme by the United States to ship missile parts to Iran in exchange for hostages in Lebanon. The present record or any reasonable inference to be drawn therefrom indicates, however, that the defendant's alleged involvement with Iran was limited to the sale of Hawk missile parts.[2] The Court finds that many portions of the Tower Report not dealing with Hawk missile parts simply are irrelevant in light of the record and defendant's theory that he was selling Hawk missile parts at the behest of the United States government. To the extent certain portions of the report are relevant, defendant's offer fails for the reasons stated below and also for failure to overcome the burden imposed by Fed.R.Evid. 403, that is, any probative value to be served by admission of the entire report is substantially

Holly B. Fitzsimmons, Dennis King, Asst. U.S. Attys., Stanley A. Twardy, Jr., U.S. Atty., Bridgeport, Conn., for plaintiff.

1. The Court sustained the government's objection in open Court to the offers before the close of the evidence.

2. The interjection by way of similar act evidence of Bell helicopter parts does not affect this ruling.

outweighed by the danger of confusion of the issues or of misleading the jury, and by considerations of undue delay.

Alternatively, defendant would limit his offer to pages III–1 through III–18 and a portion of page III–19. Relevancy is certainly an issue with respect to portions of this alternative offer, as well. To the extent defendant can show relevancy, however, for either his alternative offer or his initial offer of the entire report, the Court finds defendant has failed to show admissibility under Fed.R.Evid. 801(d)(2), 803(8)(C), or 803(24).

■ Defendant argues that pursuant to Fed.R.Evid. 801(d)(2), the Tower Report is a statement which is not hearsay. Rule 801(d)(2) provides in pertinent part that a statement is not hearsay if—

> the statement is offered against a party and is ... (D) a statement by his agent or servant concerning a matter within the scope of his agency or employment made during the existence of his relationship.

In sum, the defendant would seek to admit the Tower Report as a party admission by the United States government. The Second Circuit, however, flatly rejected this theory in *United States v. Santos*, 372 F.2d 177 (2d Cir.1967). In *Santos*, the defendant sought to admit a government agent's inconsistent out-of-court statements made in the course of the exercise of his authority and within the scope of that authority. The Court held that although the "statements would be admissions binding upon an agent's principal in civil cases," they are not admissible as "evidence of the fact" against the government in a criminal case. *Id.*, at 180. In so holding, the Court stated:

> inconsistent out-of-court statements or actions of a government agent said or done in the course of his employment take on quite a different probative character in a government criminal case from that which inconsistent out-of-court acts of agents acting within the scope of their employment generally take on at trial. Though a government prosecution is an exemplification of the adversary process, nevertheless, when the Government pros-

ecutes, it prosecutes on behalf of all the people of the United States; therefore all persons, whether law enforcement agents, government investigators, complaining prosecuting witnesses, or the like, who testify on behalf of the prosecution, and who, because of an employment relation or other personal interest in the outcome of the prosecution, may happen to be inseparably connected with the government side of the adversary process, stand in relation to the United States and in relation to the defendant no differently from persons unconnected with the effective development of or furtherance of the success of, the prosecution.

\* \* \* \* \* \*

This apparent discrimination is explained by the peculiar posture of the parties in a criminal prosecution—the only party on the government side being the government itself whose many agents and actors are supposedly uninterested personally in the outcome of the trial and are historically unable to bind the sovereign. *Id.*, at 180.

Although *Santos* was decided prior to enactment of the Federal Rules, the Court finds nothing in Fed.R.Evid. 801(d)(2), the Advisory Committee notes, or recent Court decisions which would alter the *Santos* rule. *See United States v. Pandilidis*, 524 F.2d 644 (6th Cir.1975), *cert. denied* 424 U.S. 933, 96 S.Ct. 1146, 47 L.Ed.2d 340 (1976); *United States v. Kampiles*, 609 F.2d 1233, 1246 (7th Cir.1979), *cert. denied* 446 U.S. 954, 100 S.Ct. 2923, 64 L.Ed.2d 812 (1980) ("Nothing in the Federal Rules of Evidence suggests an intention to alter the traditional [*Santos*] rule and defendant has cited no truly contrary case indicating [a trend otherwise].") Accordingly, the Court rejects defendant's argument that the government pursuant to Fed.R.Evid. 801(d)(2) and for purposes of this criminal proceeding ought to be bound by the Tower Report. The Court declines to admit the Tower Report or the offered portion thereof as an admission of a party-opponent.

■ Defendant also seeks admission of the Tower Report or, alternatively, portions thereof pursuant to Fed.R.Evid. 803(8)(C) and 803(24). These rules provide in pertinent part:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(8) ... Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

(24) ... A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness ...

At the outset, the Court notes that despite Rule 803(8)(C)'s requirement that the factual findings a party seeks to admit result from an investigation made pursuant to authority granted by law, the Board itself limits the admissibility of its report in proceedings such as that now pending before the Court by stating:

*This Board was not established, however, as an investigative body nor was it to determine matters of criminal culpability.* Rather, the Board was established to gather the facts, to place them in their proper historical context, and to make recommendations about what corrective steps might be taken.

Tower Report at III-1 (emphasis added). The Report, in and of itself, then, provides a basis for this Court's ruling that pursuant to Rule 803(8)(C) the Report is inadmissible.

Further, the defendant, recognizing that the entire report does not constitute factual findings for purposes of Rule 803(8)(C), indicated on March 26, 1987 that he is interested in admitting only that portion of the report containing factual conclusions or a determination of facts. *United States v. Corr*, 543 F.2d 1042, 1051 (2d Cir.1976). It appears the portion to which defendant was referring is contained in his alternative offer to admit pages III-1 through III-18 and a portion of III-19. The Court need not decide this issue, however, since it finds the Tower Report at least as to this proceeding lacks sufficient indicia of trustworthiness so as to be admissible under either Rule 803(8)(C) or Rule 803(24).

When determining the admissibility of factual findings pursuant to Rule 803(8)(C), the Advisory Committee notes that admissibility is assumed in the first instance, "but with ample provision for escape if sufficient negative factors are present. Factors which may be of assistance in passing upon the admissibility of evaluative reports include:"

(1) the timeliness of the investigation ...

(2) the special skill or experience of the official ...

(3) whether a hearing was held and the level at which conducted ...

(4) possible motivation problems suggested by *Palmer v. Hoffman*, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943).

Advisory Committee note.

In evaluating the timeliness of the investigation, it is apparent the Board's efforts were stymied, at least in part, by the two year passage of time. Indeed, important failures of recollection by major policymakers are apparent. The Tower Board, as well, spoke to this problem regarding those interviewed for the Report.

No one interviewed by the Board seemed able to provide a unified account of the events in August independent of calendars or meeting notes. In the lives of these particularly busy individuals this should not be surprising. This lack of a total and accurate recall may suggest an equally important point: when these events occurred, they were not treated by many of the participants as sufficiently important.

Many of these events occurred almost two years ago, and memories fade.

Tower Report at III-2.

Although the timeliness of the investigation was a matter beyond the Board's control and for which the Board cannot be

blamed, the Court finds the two year lapse of time to be a circumstance substantially undermining the trustworthiness of the report for purposes of the proceedings herein.

Looking next to the special skill and experience of the Board, the Court has been presented with no evidence which would impugn the trustworthiness of the Report on this ground. The Tower Board, however, acknowledged, and the Court has already noted, that the Board was not established as an investigative body. Tower Report III–1. Indeed, the Board's "mandate was not to resolve conflicts among various recollections but to attempt to ascertain essential facts as they affect conclusions about the national security process." Tower Report at III–2. The Board simply was not established as an investigative body, as Rule 803(8)(C) would envision.

With regard to the third factor, whether a hearing was held and the level at which conducted, the Court again turns to the Board's own statements:

The limits of time, resources, and legal authority were handicaps but not unreasonable ones.

The Board has no authority to subpoena documents, compel testimony, swear witnesses, or grant immunity.

Tower Report at III–1.

Certainly, the full panoply of judicial procedures need not be employed for factual findings to be admissible under Rule 803(8)(C). The Court, in light of other problems the Commission encountered, however, such as interviewees' inability to recall events, questions whether the process by which the Commission's facts were gathered was sufficiently reliable for purposes of admitting the resultant factual findings in the proceeding herein.

Finally, the fourth factor, possible motivation factors, reflects a concern that the report be compiled for the purpose of impartially finding the facts, not in anticipation of litigation. *In Re Japanese Electronic Products,* 723 F.2d 238, 265 (3d Cir. 1983), *rev'd on other grounds, Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The Tower Board's study took place following the Iran/Contra affair having been made public. Not only was the President's ability to manage foreign affairs being questioned, but the possibility of criminal prosecution for various officials lingered on the horizon. While the Court does not question the Board's ability to impartially consider the evidence before it, the Court does question the underlying sources of information. The Board itself noted that

there is also the chance that, for whatever reason, individuals concealed evidence or deliberately misled the Board.

Tower Report at III–2.

Indeed, the Commission noted it was setting forth the story "as we *now* know it." Tower Report at III–1 (emphasis added). With all due respect to Senator Tower and members of the Board, the Court cannot find in light of the purpose for which the Report has been offered that the Report satisfies the Rule 803(8)(C) and Rule 803(24) mandate for trustworthiness.

## DOCUMENTS

Finally, the defendant seeks the admissibility of two documents which are contained in the Tower report and which have already been the subject of various motions. The first document is a Colonel North PROF note to Admiral Poindexter, dated April 16, 1986, appearing in the Tower Report at page B–91. The second document is a September 8, 1986 update on North's paper "Next Steps with Iran" from Colonel North to Admiral Poindexter, appearing in the Tower Report at page B–152. Defendant sets forth his argument with regard to the relevancy of these documents at page 3 of his Memorandum in Support of Motion for Reconsideration of Orders Granting in Part Government's Motion to Quash. It appears the defendant now argues that Fed.R.Evid. 801(d)(2), 803(8)(C) and 803(24) would allow the admission of these documents. With respect to the two documents at issue, the Court adheres to its earlier rulings.

The documents are not admissible as an admission of a party opponent pursu-

ant to Rule 801(d)(2) for the same reasons previously discussed in this ruling regarding the Tower Report. *See United States v. Santos,* 372 F.2d 177 (2d Cir.1967). Defendant's argument under Rule 803(8)(C) must fail, as well, since that Rule pertains only to factual findings. The underlying exhibits and data on which various findings may be based are not admissible. Finally, with regard to defendant's final argument for admissibility of these documents, the Court finds defendant on the present record has failed to meet the various requirements of Rule 803(24).

As a final note, to clarify one item with respect to the government's motion to quash, the Court did not quash the defendant's subpoenae *in part.* The subpoenae were in fact quashed. *See* Preliminary Ruling On Government's Motion To Quash, dated March 11, 1987.