**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**Peter PANDILIDIS,**
**Defendant-Appellant.**

**No. 74–1817.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 5, 1974.

Decided Oct. 24, 1975.

Certiorari Denied Feb. 23, 1976.
See 96 S.Ct. 1146.

H. Fred Hoefle, John J. Kelley, Jr., Cincinnati, Ohio, for defendant-appellant.

William W. Milligan, U. S. Atty., Cincinnati, Ohio, Robert A. Steinberg, Asst. U. S. Atty., for plaintiff-appellee.

Before CELEBREZZE and McCREE, Circuit Judges, and *DeMASCIO, District Judge.

DeMASCIO, District Judge.

■ On August 3, 1973, a grand jury returned an indictment charging the defendant with failure to file his 1968 and 1969 federal income tax returns on or before April 15 of each year,[1] in violation of 26 U.S.C. § 7203.[2] The April 15 date mentioned in the indictment was erroneous because appellant had received extensions to file his 1968 and 1969 returns until May 30, 1969, and May 31, 1970 respectively. At a pre-trial conference held on September 17, 1973, the government attorney informed defendant's counsel that he intended to correct the indictment by filing a "bill of particulars" reflecting such extensions. Thus, defendant's counsel was aware of the erroneous dates and agreed to the filing of

---

* The Honorable Robert E. DeMascio, Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

1. Count I of the indictment charged in part that the defendant ". . . during the calendar year 1968 . . . by reason of such income he was required by law, following the close of the calendar year 1968 and on or before April 15, 1969, to make an income tax return to the District Director of Internal Revenue . . . that well knowing all of the foregoing facts, he did willfully and knowingly fail to make said income tax return . . . ." Count II is identical except that it charges defendant with failing to file a 1969 return on or before April 15, 1970.

2. 26 U.S.C. § 7203 provides as follows:

Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return (other than a return required under authority of section 6015), keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 1 year, or both, together with the costs of prosecution.

the bill of particulars.[3] The bill was filed on September 21, 1973, and provides:

    I. With respect to Count I of the indictment, the United States intends to prove that the defendant, Peter Pandilidis, requested and received from the Internal Revenue Service an extension for filing his 1968 income tax return. The extension required him to file that return on or before May 31, 1969. The United States intends to prove that he did willfully and knowingly fail to make said income tax return.

    II. With respect to Count II of the indictment, the United States intends to prove that the defendant, Peter Pandilidis, requested and received from the Internal Revenue Service an extension for filing his 1969 income tax return. The extension required him to file that return on or before May 30, 1970. The United States intends to prove that he did willfully and knowingly fail to make said income tax return.

Thereafter, the defendant proceeded to a jury trial on November 6, 1973, and was convicted on both counts.

    ■ On appeal, the defendant raises several allegations of error. The most substantial issue, first presented at oral argument before this court, compels us to decide whether an indictment for a misdemeanor may be amended prior to trial by filing a bill of particulars to correct a material allegation.[4]

    ■ The filing of the bill of particulars effectuated an amendment to the indictment. Ordinarily, an indictment may be amended only by subsequent action of the grand jury. *Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960); *Ex parte Bain,* 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887).

This rule, constitutional in origin, has developed within the context of the Fifth Amendment, which protects an accused from prosecution for high crimes except upon charges filed by a grand jury. In both *Stirone* and *Bain,* the Supreme Court concluded that effectuation of the Fifth Amendment protections required the preclusion of substantial variations in an indictment unless approved by a grand jury. "Any other doctrine would place the rights of the citizen, which were intended to be protected by the constitutional provision, at the mercy or control of the court or prosecuting attorney . . . ." *Ex parte Bain, supra* at 13, 7 S.Ct. at 787. While a mere change of date is not normally considered a substantial variation in an indictment, where the date of the alleged offense affects the determination of whether a crime has been committed, the change is considered material. Since a crime is committed under 26 U.S.C. § 7203 only if the defendant fails to file a return on the date established by statute, regulation or administrative action, time is an essential element of the offense and any change in the date as charged is a substantial variation. *United States v. Goldstein,* 502 F.2d 526 (3rd Cir. 1974). Thus, the Fifth Amendment prohibits, other than by grand jury action, the changing of a date in a felony indictment where the date is an essential element of the offense. While this defendant was convicted of a misdemeanor that could have been prosecuted by information as well as by indictment, we agree with the defendant that even in misdemeanor cases, once the prosecution elects to proceed by indictment it must follow the rules developed to govern use of indictments. *United States v. Fischetti,* 450 F.2d 34 (5th Cir. 1971), *cert. denied,* 405 U.S. 1016, 92 S.Ct. 290, 31 L.Ed.2d

---

**3.** This "agreement", however, did not constitute a waiver of indictment because it was not made by the defendant in open court. See Fed.R.Crim.P. 7(b).

**4.** Generally, the sufficiency of an indictment must be tested by pre-trial motion pursuant to Rule 12(b), Federal Rules of Criminal Procedure; *Gaither v. United States,* 134 U.S.App. D.C. 154, 413 F.2d 1061, 1072 (1969); *United States v. Doelker,* 327 F.2d 343 (6th Cir. 1964); *United States v. Norman,* 391 F.2d 212 (6th Cir. 1968). However, we consented to decide the issue even though a pre-trial motion challenging the validity of the indictment was never filed.

478; *United States v. Goldstein,* 502 F.2d 526 (3rd Cir. 1974); Fed.R.Crim.P. 7(e). Accordingly, it is apparent that the district court erred in permitting amendment to the indictment by filing a bill of particulars. The issue we must resolve is whether the rule of automatic reversal required when an essential element of a felony indictment is amended other than by grand jury action should be extended to an indictment charging a misdemeanor or whether convictions for misdemeanors charged by a subsequently amended indictment should be evaluated in light of the harmless error doctrine contained in Fed.R.Crim.P. 52(a).

The Third Circuit recently resolved this issue against the government in *United States v. Goldstein, supra,* where it concluded that even in misdemeanor cases, in which indictments are not constitutionally required, any amendment to an indictment without grand jury action must result in automatic reversal. This conclusion was based on a finding of *per se* prejudice to a defendant prosecuted by an indictment that is subsequently amended. The court noted that prejudice to a defendant necessarily follows an amendment to an indictment because the government obtains distinct advantages from the indictment procedure; it benefits from discovery through the use of the grand jury process and from the possibility that a jury verdict might be subtly influenced by the fact that an impartial grand jury found probable cause to charge the accused.[5]

It may be true that the government obtains an advantage by initiating prosecution by indictment. However, it does not follow that such an advantage should result in automatic reversal of the defendant's misdemeanor conviction. Rather, we think that reversal should take place only where the amendment of

the indictment results in actual prejudice to any of the interests of the defendant protected by the indictment procedure.

The rules governing the content of indictments, variances and amendments are designed to protect three important rights: the right under the Sixth Amendment to fair notice of the criminal charge one will be required to meet, the right under the Fifth Amendment not to be placed twice in jeopardy for the same offense, and the right granted by the Fifth Amendment, and sometimes by statute,[6] not to be held to answer for certain crimes except upon a presentment or indictment returned by a grand jury. *Russell v. United States,* 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); *United States v. DeCavalcante,* 440 F.2d 1264 (3rd Cir. 1971); *United States v. Bryan,* 483 F.2d 88 (3rd Cir. 1973); *Gaither v. United States,* 134 U.S. App.D.C. 154, 413 F.2d 1061 (1969). The rule preventing the amendment of an indictment should be applied in a way that will preserve these rights from invasion; where these rights are not threatened, rules governing indictments should not be applied in such a way as to defeat justice fairly administered.

In this case, the first two of these interests were in no way infringed by the amendment to the indictment. The defendant's right to notice and fair opportunity to defend was not infringed, since he was made aware of the amendment well in advance of trial; neither was his freedom from double jeopardy infringed since the record was sufficiently detailed to protect him against a subsequent prosecution for the same offense. Thus, defendant's argument must stand or fall on the third interest protected by the indictment procedure, *viz.,* the constitutional right not to be held to answer for certain crimes except upon a

---

5. We are troubled by the suggestion in *Goldstein* that a petit jury might consider a grand jury indictment as tending to prove a defendant's guilt. It is impermissible for a jury to infer guilt from the fact of an indictment or information. See Mathes & Devitt, *Federal Jury Practice and Instructions* § 806.

6. In *Russell v. United States,* 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), prosecution by indictment was not constitutionally required for the offense as charged. However, a statutory provision required prosecution only by indictment and that Court adopted a *per se* rule of reversal to protect this statutory right.

presentment or indictment. *United States v. Goldstein, supra* at 529.

■■■■ Defendant argues that he suffered prejudice in that, since evidence of the extension was never submitted to the grand jury, an impartial group of citizens did not have occasion to consider whether there was probable cause to prosecute. However, this function "has *no relevance* to an indictment which is not constitutionally required." *United States v. Goldstein, supra* at 532 (Hunter, J., dissenting). The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury. . . ." Since appellant was not charged with an infamous crime,[7] he cannot rely on the constitutional right to be convicted only after indictment by a grand jury. Neither did appellant, under federal law, have a statutory right not to be held to answer for a violation of § 7203 except upon a presentment or indictment.

■■■■ If we found constitutional error, we would have to determine whether the interest protected was so substantial that it could not be disregarded even if the error were "harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). However, since the error permitting amendment to the indictment in this case did not reach constitutional dimensions, the appropriateness of reversal must be determined under Rule 52(a) Fed.R.Crim.P., which provides:

"[A]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

In this case, the defendant has failed to identify any substantial rights affected by the amendment. It is apparent from

this record that the defendant, himself an attorney, at all times knew that the date appearing in the original indictment was erroneous. The defendant was made aware in sufficient time prior to trial that the extended date for filing would be used. Moreover, the defendant, having consented to the filing of the bill of particulars, may not now assert surprise. Additionally, the defendant has not identified any evidence that the prosecutor may have gained through a grand jury proceeding not otherwise available from other sources. Nor can we find from this record any substantial likelihood that the jury's verdict was influenced by its awareness that an indictment had been returned by an impartial grand jury. The evidence of the defendant's guilt presented by the government was convincing beyond a reasonable doubt. Under these circumstances, we fail to see how prejudice could be identified. The error, therefore, did not affect any of the defendant's substantial rights and does not require reversal under Rule 52(a) Fed.R.Crim.P.

■■■■ The defendant advanced three other objections on appeal. First, the defendant contends that the district court erred in denying his motion for new trial, which was based upon the the submission of affidavits contradicting the character evidence of a government witness. The district court determined that the newly discovered evidence did not concern a material issue and, therefore, did not require a new trial. A motion for a new trial based on newly discovered evidence is addressed to the sound discretion of the district court. *United States v. Crowder,* 351 F.2d 101 (6th Cir. 1965). We cannot find that there was an abuse of discretion in denying the request in this instance. Second, the defendant contends that the district

---

7. Infamous crimes are defined as those which can result in incarceration in a penitentiary. *Mackin v. United States,* 117 U.S. 348, 6 S.Ct. 777, 29 L.Ed. 909 (1886). The offense of failing to file a timely income tax return is not considered an infamous crime because the maximum sentence provided (one year) precludes incarceration in a penitentiary. See 18 U.S.C. § 4083: "A sentence for an offense punishable by imprisonment for one year or less shall not be served in a penitentiary without the consent of the defendant."

**650**

court erred by omitting the phrase "evil motive" in its instruction to the jury concerning the definition of willfulness. We have reviewed the jury instructions as a whole and find them clearly consistent with the guidelines set forth in *United States v. Bishop,* 412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973). Finally, the defendant complains that the district court precluded the admission of evidence of actions taken by the Central Service Center of the Internal Revenue Service after defendant had filed his returns on February 18, 1971. The defendant sought to introduce this evidence, which the defendant thought demonstrated that an agent of the government believed the defendant guilty of no more than a civil offense, to establish that defendant was not guilty of the criminal offense with which he was charged. While evidence of contradictory statements may be used to impeach a government agent, they may not be introduced to prove the truth of the statements offered. *United States v. Santos,* 372 F.2d 177 (2nd Cir. 1967); *United States v. Powers,* 467 F.2d 1089 (7th Cir. 1972). *United States v. Santos, supra,* at 180 points out that:

> "[T]he inconsistent out-of-court statements of a government agent made in the course of the exercise of his authority and within the scope of that authority, which statements would be admissions binding upon an agent's principal in civil cases, are not so admissible here [against the government] as 'evidence of the fact.'"

The trial court was correct in excluding this evidence.

Accordingly, the judgment is affirmed.